My doubts in this case were at first considerable, whether the plaintiff could have a certiorari. But, upon further consideration, and on examination of the act of Assembly of 1796, ch. 29, I think he can. The act evidently contemplates an ex parte proceeding. It does not direct any process or notice to the administrator; and, indeed, from the nature of the thing, no notice could be given to the administrator, because the widow's petition is to be filed at the same court that letters *Page 446 
of administration are granted. Indeed, it must have been well understood by the Legislature that if an adversary suit was prescribed between the widow and the administrator for her year's allowance, the provision intended for her by the act would most commonly fail, and the (619) act be nugatory; for she herself is entitled to administration, and generally does administer, and she could not sue herself. But the allowance given by the act is not made to depend on her administering or on another's doing so. It is given from the necessity of the case, and was intended to relieve her immediate wants. She is equally entitled to it in both instances. And I think that it may be laid down as a safe rule that every person affected in interest by ex parte
proceedings in an inferior court shall have, upon a proper case, acertiorari. Their rights shall not be concluded by an ex parte transaction; but they shall have an opportunity of a trial, the writ of a certiorari
being the only remedy, they shall have that.
Another objection occurred, however, to me upon this part of the case: and that was, whether the next of kin have such an interest as gives them the right to the writ. A distributive share is not, properly speaking, a legal right, but an equitable one. It is a trust, and a court of law cannot take notice of it. Upon this ground I should have perhaps been against allowing the writ. But the act itself takes notice of their interest by expressly exonerating the administrator from accountability for the amount of the allowance to the "claimants upon the estate of the deceased as
creditors." The claimants here spoken of are clearly contradistinguished from creditors, and plainly mean the next of kin, whose interests are thereby made, quo ad hoc, legal rights, which this Court can protect.
Upon the other point, whether the allowance made in this case was a proper one, I have no doubt. It never could have been intended that the widow should be allowed a support for her slaves and stock which she obtained, as her part of her husband's estate, or otherwise acquired after the death of the husband. Indeed, the allowance is generally made long before administration of the intestate's estate takes place, and, therefore, could not embrace her share thereof. The act contemplated a relief to her immediate and pressing necessities. But the construction contended for, in her behalf, would make her wealth and ability to relieve her own necessities without assistance a ground for a larger claim. The true construction of the law seems to me to be that (620) the widow shall be allowed a reasonable, that is, an easy and comfortable subsistence for herself and children and their necessary servants or attendants. It was not intended to include any other persons; for, although the second section speaks of her family, by the *Page 447 
third section the allotment is vested in the widow for her own use and the use of her children. What may be a reasonable allowance cannot be precisely defined. No certain rule can be laid down, as it must depend on the mode of life of the family and the situation of the estate. That allowance, in this case, is so far beyond bounds — so palpably extravagant and bottomed on such a wrong construction of the law — that it must be set aside and a new one made.
NOTE. — Upon the question of the certiorari, see Dougon v. Arnold,15 N.C. 99; Swaim v. Fentress, ibid., 601; Allen v. Williams, 2 N.C. 17;Fryar v. Blackmore, 5 N.C. 94; Betts v. Franklin, 20 N.C. 466;Petty v. Jones, 23 N.C. 400.